UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Brad Thompkins,            )
                           )
   Plaintiff,              )
                           )
v.                         )   No. 15 CV 50097
                           )   Magistrate Judge Iain D. Johnston
Carolyn W. Colvin, Acting  )
Commissioner of Social Security, )
                           )
   Defendant.              )

## MEMORANDUM OPINION AND ORDER

Plaintiff Bradley J. Thompkins brings this action pursuant to 42 U.S.C. § 405(g), challenging the denial of disability benefits. As explained below, Thompkins's motion for summary judgment is granted; the Administration's motion is denied; and this case is remanded.

## I. BACKGROUND

By the end of 2013, Thompkins had undergone three spinal surgeries: an anterior discectomy and fusion at both the C5/6 and C6/7 levels, a decompressive laminectomy at the C5-7 levels, and a lumbar discectomy. During much of that time, until August 2012, Thompkins was treated by Dr. Bernard O'Malley. On May 16, 2012, Dr. O'Malley filled out a questionnaire concerning Thompkins's residual capacity, and concluded that—without going into unnecessary detail—Thompkins suffered from pain in his back and numbness in his hands that significantly limited his ability to sit or stand for even a moderate period of time or to grasp or do fine manipulations of objects with his hands. Dr. O'Malley also indicated that Thompkins would need to miss more than four days of work a month. However, on June 29, 2012, an administrative law judge (ALJ) with the Social Security Administration rejected that opinion stating, in part, "Dr. O'Malley alludes to left arm restriction. All the chart notes describe right

1

upper extremity symptoms, when they are asserted. Therefore, the source is only loosely familiar with the patient's progress." (R. 163.) The ALJ denied Thompkins's petition for benefits. Thompkins appealed that denial, but it was made final after the Appeals Council denied Thompkins's request for review and he did not file a complaint in federal court.

A few weeks after the ALJ denied benefits, on July 20, 2012, Dr. O'Malley authored a second opinion, in which he said the following:

> Mr. Thompkins has neck and low back pain. He had two surgeries in his neck on anterior and posterior approaches. He has constant grinding sensation and numbness in both hands in first three digits bilaterally.
> He is totally disabled due to pain and numbness. He has poor ability to twist, bend, and raise his arms. The low back limits these activities. He has problems with fine motor ability. He has trouble grasping fine objects such as tape.
> He has no options at this time having seen neurosurgery and pain management. He is and remains totally disabled.

(R. 708.) This opinion was based, as best as the record can show, on previous examinations *and*, critically for this opinion, a follow-up visit with Dr. O'Malley on July 20, 2012. Thereafter, Thompkins began to see Dr. Kevin J. Gander as his primary care physician. During that time, Thompkins had his third back surgery and fell twice, which he reported aggravated his condition. Over the next two years, Dr. Gander examined Thompkins many times and sent him for consultations, physical therapy, a functional capacity assessment, an EMG, and pain management. On September 17, 2014, Dr. Gander drafted a letter which stated, in its entirety, that "Bradley J. Thompkins has been followed for chronic back and neck pain and upper extremity paresthesias, and is currently unable to work. He will be rechecked in 3 months." (R. 1730.)

The ALJ adjudicating the instant petition held two hearings. At the first, on June 9, 2014, the ALJ accepted testimony from a medical expert named Dr. Laura Rosch and a vocational

2

expert. The ALJ then permitted Thompkins's attorney to have Thompkins referred for another functional capacity assessment (FCA) and held a supplemental hearing on December 2, 2014. At that hearing, the ALJ accepted testimony from a different medical expert named Dr. Sai Nimmagadda and another vocational expert. In short, both Drs. Rosch and Nimmagadda, who testified largely in conformity with each other, opined that the medical record supported some limitations to Thompkins's ability to manipulate and grasp with his hands and some restrictions on his sitting, standing, and walking, but not to the degree opined by Drs. O'Malley or Gander. The ALJ assigned great weight to Dr. Nimmagadda's conclusions and "some weight" to Dr. Rosch's conclusions, but "little weight" to Dr. O'Malley's opinions and none at all to Dr. Gander's. In setting out his reasoning concerning Dr. O'Malley, the ALJ stated the following:

> The undersigned agrees with the prior hearing decision giving little weight to the May 2012 opinion of Dr. O'Malley, the primary care physician. Dr. Nimmagadda specifically testified that, in his opinion, the degree of functional limitation assessed by Dr. O'Malley is not supported by the doctor's own findings or the other substantial evidence of record.

(R. 188.) In another section, the ALJ also stated the following:

> The undersigned asked Dr. Nimmagadda if there was evidence to support Dr. O'Malley's assessment that the claimant would likely be absent from work more than four days per month as a result of the impairments or treatment. "I do not see that substantiated in the record," Dr. Nimmagadda stated. "It isn't noted in the record that he is required to stay in bed all day."

(R. 187.)[1] Finally, in dealing with Dr. O'Malley's opinions and the effect of the previous adjudication, the ALJ stated the following:

> The undersigned has compared the evidence considered in reaching the previous decision with that relating to the claimant's current claim. Based on this comparison, the undersigned finds that no new and material evidence has been submitted and that there has been no change in statute, regulation, ruling or legal precedent concerning the facts and issues ruled upon in connection with the

---

[1] The ALJ did not note that, on the previous page in the transcript, Dr. Nimmagadda also stated that he could not "agree or disagree with [Dr. O'Malley's] assessment. It's difficult to quantify how many good days and bad days he has based on what he has filed on the record, but it's very possible in that data [sic] it could contain." (R. 30.)

3

> previously adjudicated period. The May 16, 2012 opinion of Dr. O'Malley, a treating source, was considered in the prior decision. The subsequent letter from Dr. O'Malley dated July 20, 2012 essentially serves to bolster his opinion and does not constitute material evidence as it is essentially a recitation of evidence that was already in the record and considered in the prior decision.

(R. 183 (citation omitted).)

Dr. Gander's opinion received less discussion:

> Dr. Gander's September 17, 2014 treating source opinion that the claimant is "currently unable to work" is one that is reserved to the Commissioner and is given no weight as he does not assess any specific functional limitations or specify what kind of work the claimant would be unable to perform.

(R. 188 (citation omitted).)

Based on the ALJ's acceptance of Dr. Nimmagadda's testimony, he determined that there were a substantial number of jobs Thompkins could perform and denied the petition for benefits. In his appeal to this Court, Thompkins argues that the ALJ's decision was not based on substantial evidence because, in large part, of his rejection of Dr. O'Malley's treating-source opinion.

## II. ANALYSIS

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build this logical bridge on behalf of the ALJ or Commissioner. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014).

The treating-source rule generally requires the ALJ to "consider all" of the following factors—referred to as the checklist factors—in weighing any medical opinion: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (checklist factors help the ALJ "decide how much weight to give to the treating physician's evidence"). But within the weighing process, a treating-source opinion receives particular consideration. It is entitled to "controlling weight" if it is (i) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and if it is (ii) "not inconsistent with the other substantial evidence in [the] case." § 404.1527(c). The ALJ must first assess whether to give the treating source's opinion controlling weight. If the ALJ does not give the opinion controlling weight under this first step, the ALJ cannot simply disregard it, but must proceed to the second step and determine what specific weight it should be given by using the checklist factors. *See Moss v.*

5

*Astrue*¸ 555 F.3d 556, 561 (7th Cir. 2009). These steps are separate and distinct, ALJs are not permitted to conflate them. *See Edmonson v. Colvin*, No. 14 CV 50135, 2016 U.S. Dist. LEXIS 32019, at *16 (N.D. Ill. Mar. 14, 2016) ("The ALJs routine conflation of these steps is maddening."); *Taylor v. Colvin*, No. 14 CV 50006, 2015 U.S. Dist. LEXIS 111300, at *16-17 (N.D. Ill. Aug. 4, 2015).

### A. Dr. Gander

Thompkins first complains about the ALJ's assignment of no weight to Dr. Gander's one-sentence opinion that Thompkins "is currently unable to work." Although the treating-source rule provides the general rule when an ALJ considers the opinion of a treating physician, like Dr. Gander, the regulations have an exception built in for, as here, when the opinion is simply a bald statement that an individual is disabled. In that case, the same regulations as set out the treating-source rule state the following:

> (d) Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
>> (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.
>> (2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

> (3) We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section.

20 C.F.R. § 404.1527. Under this section, the treating-source rule does not to apply to bald statements, like Dr. Gander's, that an individual is "unable to work" because the statement is not a medical opinion, *id.* at § 404.1524(d), and because the plain language of the section indicates that no special significance is given to the source of such an opinion, *id.* at § 404.1524(d)(3). Thus, the ALJ was not required to apply the treating-source rule. At most, the section can only be read to mandate that the ALJ "consider" Dr. Gander's statement, which he did. Indeed, the ALJ not only expressly considered it, but he gave an explanation why he rejected the bald statement. (R. at 188 ("[Dr. Gander's opinion] is given no weight as he does not assess any specific functional limitations or specify what kind of work the claimant would be unable to perform.").) Accordingly, although brief, the ALJ's consideration of Dr. Gander's one-sentence opinion does not warrant a remand.

### B. Dr. O'Malley

The ALJ's treatment of Dr. O'Malley, however, is a different story. In responding to Thompkins's arguments, the Administration argues that the ALJ seemingly rejected Dr. O'Malley's opinions for two reasons (1) *res judicata*, meaning that the ALJ did not need to address Dr. O'Malley's opinions at all because of the previous adjudication, and (2) that he adequately supported his decision to afford Dr. O'Malley's opinions little weight in any event.

As to the first, the parties agree that both concepts of *res judicata*—issue and claim preclusion—apply to social security proceedings. *See Groves v. Apfel*, 148 F.3d 809, 810-11 (7th Cir. 1998). Thus, the claim that Thompkins was disabled on or before June 29, 2012, was fully determined and Thompkins was precluded from raising that claim. Similarly, the issue of

7

the weight to be given to Dr. O'Malley's May 2012 opinions had been fully adjudicated, and thus that issue was also precluded from relitigation. However, and notwithstanding those facts, two issues prevent the Court from agreeing with the Administration that *res judicata* is dispositive of Dr. O'Malley's opinions in their entirety. First, the Seventh Circuit has directly held that *res judicata* does not permit an examiner from ignoring evidence originally presented in a completed adjudication where "in combination with later evidence," the evidence would show that the individual later became disabled. *Id.* at 810. Here, additional evidence from Dr. Gander's examinations, the FCA ordered between the ALJ's hearings, and some of Dr. Nimmagadda's own testimony supported Dr. O'Malley's opinions, and thus the ALJ was not free, as the Administration seems to argue, to ignore them on *res judicata* grounds. Second, Dr. O'Malley's treatment did not end by June 29, 2012. Dr. O'Malley continued to see and treat Thompkins after that date on two occasions, and authored an additional report after one of those examinations offering additional opinions. The ALJ was not free to disregard Dr. O'Malley's subsequent opinion based on additional treatment simply because a previous ALJ had rejected his earlier conclusions based on earlier evidence.

Although the Court disagrees with Thompkins's argument that the ALJ in this case ignored Dr. O'Malley's opinions and conclusions,[2] the ALJ nevertheless did not comply with the treating-source rule. The ALJ never determined whether Dr. O'Malley's conclusions should be given controlling weight by determining if they were (i) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (ii) "not inconsistent with the other substantial evidence in [the] case." § 404.1527(c). Instead, he simply stated that Dr. Nimmagadda testified that the "functional limitation assessed by Dr. O'Malley" in May 2012 was not supported by Dr.

---

[2] Thompkins argues that the ALJ never even mentioned Dr. O'Malley's July 20, 2012 report in his reasoning. As set out *supra*, that argument is based on a misreading of the ALJ's opinion, which specifically, if somewhat tersely, mentioned that opinion. Accordingly, the Court rejects that argument as a basis to remand the case.

8

O'Malley's findings or other substantial evidence, and failed to address whether any of the conclusions in the July 20, 2012 report were supported by findings or other substantial medical evidence. This is particularly troublesome because it is the July 20, 2012, report that is clearly outside the scope of the previous adjudication, yet its contents received essentially no analysis.

Even had the ALJ properly analyzed that first step, however, and properly supported a finding that Dr. O'Malley's conclusions were not due controlling weight, he still failed to follow the regulations on medical opinions. Of the six factors set out in the regulations, the ALJ did not mention the length of treatment, the nature and extent of the treatment relationship, or Dr. O'Malley's degree of specialization. As it relates to the supportability of Dr. O'Malley's medical opinions and the consistency of the opinions with the record as a whole, the ALJ did mention those factors as it applied to Dr. O'Malley's May 2012 report, but not to the conclusions and opinions set out in the more relevant July 2012 report.

In an effort to salvage that problem, the Administration argues that the ALJ incorporated the analysis from the previous ALJ into his own analysis, which addressed some of those concerns. First, even if true, that would not address any of the issues with the July 2012 report, as it did not exist at the time of the previous adjudication. Second, the Court is not convinced the Administration is correct that the ALJ intended to incorporate the previous analysis. In the opinion, the ALJ did state that he "agrees with the prior hearing decision giving little weight to the May 2012 opinion of Dr. O'Malley," but goes on to state that the reasoning was because of Dr. Nimmagadda's testimony. It appears that the second ALJ simply agreed with the original ALJ's result, but did not incorporate the reasoning.

Third, even if the Administration is correct and the instant ALJ intended to incorporate the original ALJ's analysis, that does not solve the problem. The first ALJ mentioned the extent

of the relationship between Dr. O'Malley and Thompkins in only one place; specifically, she criticized the relationship because Dr. O'Malley's May 2012 report mentioned left arm restriction while the medical records only supported the existence of right arm symptoms, thus "the source is only loosely familiar with his patient's progress." (R. 163.) But by the time the ALJ in this case had a more full medical record, it is clear that Thompkins has, and has had, problems with symptoms in both arms. So while that analysis may have been valid based on the record before the original ALJ, the current record dispelled any question of that being accurate when the current ALJ wrote his opinion. Thus, although the original ALJ mentioned the extent and nature of the treatment relationship, that analysis was no longer supportable on the record before the current ALJ and incorporation of it cannot save the current ALJ's analysis. Furthermore, the original ALJ criticized Dr. O'Malley's opinions because he provided "no medical diagnoses, just symptomatic references." (*Id.*) But the July 2012 report, which the original ALJ did not have but the instant one did, rectified that criticism as well. So even if incorporation was intended and even if the criticisms in the original ALJ's opinion were valid as to later-written report by Dr. O'Malley, they still would not rectify the current ALJ's failure to follow the treating-source rule. *See Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014) ("In this case, the record contained evidence about the length of Mr. Scrogham's relationship with his longstanding physicians, the nature of the treatment for his progressive disease, the consistency of the doctors' reports about Mr. Scrogham's back and knee pain and Dr. James's specialty as a surgeon. The ALJ, however, did not discuss any of these factors in her opinion, so we cannot assess whether she appropriately chose not to give much weight to the treating physicians' opinions. The ALJ here should have addressed these factors in her opinion to enable us to review whether she engaged in the correct methodology." (footnote omitted)).

Finally, the ALJ engaged in the forbidden act of "cherry picking" by mentioning only the evidence that tended to support rejecting Dr. O'Malley's opinions (and to be sure, there is some) without even a mention of the substantial examination and evaluation reports that tended to support accepting Dr. O'Malley's opinions, including evidence from Dr. Gander's treatment records and the FCA which the ALJ had the second hearing specifically to consider. *See Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014) ("The ALJ simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record. . . . The error here is the failure to address all of the evidence and explain the reasoning behind the decision to credit some evidence over the contrary evidence, such that we could understand the ALJ's logical bridge between the evidence and the conclusion. By failing to even acknowledge that evidence, the ALJ deprived us of any means to assess the validity of the reasoning process.").

Consequently, the ALJ failed to create a logical and accurate bridge between Dr. O'Malley's conclusions and opinions, and his decision to reject them and deny benefits. The Administration does not argue that any such error was harmless, and the Court does not see a good argument that it was given the importance of Dr. O'Malley's opinions to Thompkins's presentation and arguments before the ALJ. *See also Scrogham*, 765 F.3d at 697 n.48 ("We cannot say that the failure to consider these [treating-source rule] factors is harmless; we have acknowledged their significance in many of our prior cases.").

For these reasons, Thompkins's motion for summary judgment is granted; the government's motion is denied; and this case is remanded for further consideration. This Court makes no determination whether Thompkins is disabled. *See Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). Instead, the Court is only remanding this case for an analysis and decision

that is consistent with this opinion, an opinion that applies the Social Security Administration's own rules and regulations. The Court reiterates its hope that the Commissioner will address with the ALJs the systemic failure to properly analyze treating-source opinions.



Date:  September 26, 2016          By:     _____
                                            Iain D. Johnston
                                            United States Magistrate Judge